IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **AL'S FRESH MARKET, LLC.**, A Michigan Limited Liability Company, and **AUSAN AHMED**, an Individual<br>        Plaintiffs<br><br>-vs-<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE**<br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>Jury Trial: ☐ Yes ☒ No |

The Plaintiffs, Al's Fresh Market, LLC, a Michigan Limited Liability Company, and Ausan Ahmed, an Individual, and hereby sue the Defendant, the United States Department of Agriculture under 28 U.S.C. §1331, 7 U.S.C. §§2018 and 2023, and 5 U.S.C. §§555(b) and (706)(l) upon the grounds set forth herein:

### SUMMARY OF THE CASE

1. The Plaintiffs, Al's Fresh Market, LLC and Ausan Ahmed, own and operate a retail food store at 16523 Harper Ave, Detroit Michigan 48224-1944.

2. After nearly two years of applications to the Defendant to participate in the Supplemental Nutrition Assistance Program (SNAP), the Defendant has regularly failed to make a determination on the application. Instead, the Defendant has regularly "withdrawn" the application in an effort to avoid Administrative and Judicial Review, and despite the Plaintiffs full response and compliance with the Defendant's requests.

3. The Defendant is required by 7 U.S.C. 2018 and 7 C.F.R. §278.1 to review applications and make determinations. The Defendant does not have authority to simply withdraw applications at their whim.

4. Nevertheless, the Defendant has specifically engaged in this impermissible activity against retailers who sell fresh seafood in an effort to prevent them from participating in the program, as they otherwise qualify to be an authorized SNAP retailer.

5. Thus, the Defendant's actions have been an intentional effort to circumvent regulatory requirements and otherwise deny the Plaintiffs' application.

6. The Plaintiffs ask, as set out fully herein, for the Court to enter injunctive relief preventing the Defendant from such continued activity, and to grant the Plaintiffs' application for participation.

## VENUE AND JURISDICTION

7. This action is brought pursuant to 7 U.S.C. §2023(a)(13)-(15), and accordingly venue is properly laid in the District Court where the retailer's place of business is located.

8. The Court has jurisdiction over this matter as set out in 7 U.S.C. §2023(a)(13)-(15) to make a *trial de novo* determination as to whether or not the Defendant's de facto denial of the Plaintiffs' application for authorization was correct.

9. The Plaintiffs were not afforded an opportunity to conduct an Administrative Review (as the Defendant impermissibly refused to issue a determination on the application despite two years of efforts), and as such have exhausted their administrative remedies.

## PARTIES

10. The Plaintiff, AL'S FRESH MARKET, LLC, is a Michigan Limited Liability Company doing business at 16523 Harper Ave, Detroit Michigan 48224-1944.

11. The Plaintiff, AUSAN AHMED, is a natural person, owner of Al's Fresh Market, LLC, and resident of the State of Michigan.

12. The Defendant, the UNITED STATES OF AMERICA, operates through the United States Department of Agriculture (USDA), Food and Nutrition Service (FNS), to oversee SNAP.

## GENERAL ALLEGATIONS

13. In 2019, the Plaintiffs filed an application with the Defendant, through its Food and Nutrition Service (FNS) to participate in the Supplemental Nutrition Assistance Program (SNAP), formerly known as food stamps.

14. After providing all of the documentation FNS believed to be necessary to process the initial application, the Defendant decided to deny the Plaintiffs' upon grounds that the Store qualified as a result of its hot/cold prepared food sales under 7 CFR 278.1(b)(1)(iv).

15. The Plaintiffs filed an appeal of the denial (known as an "Administrative Review"), which ultimately resulted in a reversal of the denial in February 2020.

16. Since that time, the Defendant has issued approximately ten (10) additional document and information requests over the course of twenty months.  The Plaintiffs' license application has been involuntarily withdrawn by the Defendant at least twice (both times claiming that documents weren't provided when they were), and this most recent application has been in process for eight months.

17. The Defendant is limited to 45 days to process a completed application pursuant to 7 C.F.R. §278.1(a)

18. Retailer authorization is governed in pertinent part by 7 U.S.C. §2018 and 7 C.F.R. §278.1.

19. There are two (2) criterion under which a retailer can qualify for SNAP representation:

    <u>Criterion A:</u> "In order to qualify under this criterion, firms shall:

    (A) Offer for sale and normally display in a public area, qualifying staple food items on a continuous basis, evidenced by having, on any given day of operation, no fewer than seven different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety and at least one variety of perishable foods in at least three staple food categories. Documentation to determine if a firm stocks a sufficient amount of required staple foods to offer them for sale on a continuous basis may be required in cases where it is not clear that the firm has made reasonable stocking efforts to meet the stocking requirement. Such documentation can be achieved through verifying information, when requested by FNS, such as invoices and receipts in order to prove that the firm had ordered and/or received a sufficient amount of required staple foods up to 21 calendar days prior to the date of the store visit. Failure to provide verifying information related to stock when requested may result in denial or withdrawal of authorization. Failure to cooperate with store visits shall result in the denial or withdrawal of authorization.

    (B) Offer for sale perishable staple food items in at least three staple food categories. Perishable foods are items which are either frozen staple food items or fresh, unrefrigerated or refrigerated staple food items that will spoil or suffer significant deterioration in quality within 2-3 weeks; and

    (C) Offer a variety of staple foods which means different types of foods within each staple food category. For example: Apples, cabbage, tomatoes, bananas, pumpkins, broccoli, and grapes in the vegetables or fruits category; or cow milk, almond milk, soy yogurt, soft cheese, butter, sour cream, and cow milk yogurt in the dairy products category; or rice, bagels, pitas, bread, pasta, oatmeal, and whole wheat flour in the bread or cereals category; or chicken, beans, nuts, beef, pork, eggs, and tuna in the meat, poultry, or fish category. Variety of foods is not to be interpreted as different brands, nutrient values (e.g., low sodium and lite), flavorings

> (e.g., vanilla and chocolate), packaging types or styles (e.g., canned and frozen) or package sizes of the same or similar foods. Similar food items such as, but not limited to, tomatoes and tomato juice, different types of rice, whole milk and skim milk, ground beef and beefsteak, or different types of apples (e.g., Empire, Jonagold, and McIntosh), shall count as depth of stock but shall not each be counted as more than one staple food variety for the purpose of determining the number of varieties in any staple food category. Accessory foods shall not be counted as staple foods for purposes of determining eligibility to participate in SNAP as a retail food store." 7 C.F.R. §278.1(B)(1)(ii).

> <u>Criterion B</u>: "In order to qualify under this criterion, firms must have more than 50 percent of their total gross retail sales in staple food sales. Total gross retail sales must include all retail sales of a firm, including food and non-food merchandise, as well as services, such as rental fees, professional fees, and entertainment/sports/games income. However, a fee directly connected to the processing of staple foods, such as raw meat, poultry, or fish by the service provider, may be calculated as staple food sales under Criterion B." 7 C.F.R. §278.1(B)(1)(iii)

20. Once a completed application is submitted, the Defendant has 45 days to process the application and make a determination pursuant to 7 C.F.R. §278.1(a). However, as noted in the regulation, a completed application includes all information that FNS deems necessary to make a determination. *Id*.

21. On September 12th, 2019, the USDA determined that the Plaintiffs were a "restaurant" as defined by 7 C.F.R. §278.1(B)(1)(iv) because more than 50% of the store's total gross retail sales were from "heated foods" or "prepared foods." As such, the Plaintiffs were denied authorization, subject to an Administrative Review.

22. The Defendant's contentions that the store sold more than 50% of its gross sales in foods was inaccurate, however. The Plaintiffs filed a request for an Administrative Review and sought to overturn the application denial. In December, 2019, the Plaintiffs filed a Brief in Support of their Administrative Review Request and set out

that the store had more than 75% of its sales in Staple Food items. Accordingly, the store should have been authorized under Criterion B of §278.1.

23. While the Administrative Review was pending, the Defendant withdrew it's licensure denial for the Plaintiffs, and the Administrative Review was dismissed as moot.

24. Thereafter, the USDA requested additional documentation on March 4th, 2020. The Plaintiffs responded timely on April 2nd, 2020 and included all of the requested documents which existed.

25. On May 6th, 2020, the Defendant again requested additional documents, which the Plaintiffs responded to on June 3rd, 2020.

26. On July 10th, the Defendant requested a third round of documents (after rescinding the denial), again looking for the same types of documents. On July 20th, 2020, the Plaintiffs responded yet again, noting that the volume of responses was absurd and that the Defendant had more than adequate information to find that the store qualified under Criterion B.

27. The Defendant did not reply to the Plaintiffs productions.

28. On August 6th, 2020, the undersigned's office reached out to inquire as to the status of the application. FNS Program Specialist Jamal Pittman, who had been responsible for the application all along, replied that the Plaintiffs' application was withdrawn (without notice) because there were insufficient documents.

29. The Defendant utilizes application withdrawals to avoid application denials, which are reviewable by the Administrative Review Branch. Withdrawals, however, are not reviewable. As noted by Mr. Pittman, the withdrawn applicant can simply re-apply –

and start the process completely over, including identical and duplicative document requests and redundant processing problems.

30. Nevertheless, the Plaintiffs subsequently resubmitted their application in accordance with the Defendant's request. At the same time, the business changed ownership, in part due to frustration with the Department's refusal to process the SNAP application.

31. Between September 1st, 2020 and October 21st, 2020, the Defendant did not respond to the Plaintiffs, or take any action on the newly resubmitted application.

32. On October 21st, 2020, the undersigned's office again contacted the Defendant asking about the application status, and Mr. Pittman replied that the application never made it to the "Work Center" and that the Plaintiffs should reach out and contact the agency's hotline.

33. The Plaintiffs' application was subsequently reinstated and yet another request for sales documentation was made by the Defendant's Program Specialist Ms. Quiana Surles. However, when the Plaintiffs reached out for clarification as to what information was sought, Ms. Surles' email indicated that she was out of the office until the deadline for the document production.

34. The Plaintiffs reached out again to Program Specialist Pittman on November 18th, 2020 regarding the timeframe for transaction receipts and received instructions. The Plaintiffs subsequently provided the requested documentation.

35. Once again, the Defendant requested additional documentation, this time in a letter dated December 7th, 2020. The Plaintiffs responded again on December 17th, 2020 with all of the documents in their possession.

36. On December 22nd, 2020, the Plaintiffs requested an update on the application again. Program Specialist Quiana responded to the inquiry indicating that the sales receipts provided didn't have as much information on them as the Department wanted. However, Ms. Quiana failed to see the information provided which included the breakdowns that the Department had requested. The Plaintiffs, through the undersigned's office notified Ms. Quiana that she had missed some of the documentation.

37. On December 23rd, 2020, the Defendant's Program Specialist Pittman replied that the sales data requested was from October 4th to 10th, 2020 – nearly a month prior to when the Defendant identified the documents originally – and not from December and therefore the application was withdrawn again. But, Mr. Pittman noted, the retailer could again apply and start the process for a third time.

38. The Plaintiffs applied for the third time in January, 2021.

39. Between the third application's date and February 10th, 2021, the Defendant took no action on the application.

40. On February 10th, 2021 the undersigned reached out yet again and requested an update on the application and asked if any additional documents would be needed. A week later (February 17th, 2021), Program Specialist Pittman responded to the email indicating that there was nothing else that was needed, but that "if anything else is needed, I will notify you as soon as possible."

41. Mr. Pittman did not reach out. On April 23rd, 2021, the undersigned asked what the status of the application was as the Department was well past the regulatory deadline

of 45 days. Mr. Pittman responded the same day that he was still in process of reviewing the now four month old application.

42. On April 28th, 2021 – nearly five months after the third application was filed – Program Specialist Pittman stated that FNS would once again need more documents regarding the store's sales.

43. On May 17th and 18th, 2021, the Plaintiffs provided all of the requested receipts and documents. The Defendant did not acknowledge the receipt of these records.

44. On May 25th, 2021, the undersigned's office again reached out to confirm the receipt of the documents. No response was received.

45. On May 27th, 2021, the Plaintiffs attempted to upload the documents through the Defendant's web portal, but found the portal to be non-functional. Accordingly, the documents were emailed yet again to the Defendant.

46. On June 1st, 2021, Program Specialist Pittman responded that he had processed the submission, though noted that a failure in function of the portal should result in the retailer physically mailing the documents in to the Department, rather than e-mailing them (as had been their practice previously).[1]

47. On June 4th, 2021, Program Specialist Pittman indicated that he was having trouble identifying which of the now many redundant applications for the Plaintiff he was processing. The issue was subsequently resolved and on June 8th, 2021, Mr. Pittman requested someone from the undersigned's office (or the Plaintiffs) contact him regarding the receipts.

---

[1] Curiously, the USDA has started emailing all vital documents to retailers, citing COVID as the reason for this, but requires the retailers to mail the documents.

48. Following the conversation with the undersigned's office, Mr. Pittman sent yet another document request for receipts on June 9th, 2021. The Plaintiffs replied with the corresponding documents on June 11th, 2021.

49. Mr. Pittman spent the following month reviewing the documents (allegedly), finally reaching out to the Plaintiffs' counsel on July 27th, 2021 by phone to ask additional questions. The undersigned requested the questions be written and submitted, which Mr. Pittman agreed to on the same day.

50. On July 30th, 2021 Program Specialist Pittman sent yet another request with more questions regarding the receipts.

51. The Plaintiffs responded, yet again, and fully explained how the receipts and the store checkout process worked.

52. On September 4th, 2021, the Defendant withdrew the Plaintiffs' application again, relaying in a telephone call to the undersigned's office that the withdrawal was based upon the Defendant's inability to understand how the store's receipt process functioned.

53. The Defendant did not provide the Plaintiffs the opportunity to submit the matter – *yet again* – for an Administrative Review.

### DEFENDANT'S ACTIONS TO AVOID REVIEW

54. The Defendant has issued such withdrawals as an attempt to circumnavigate the Administrative Review Process set forth in 7 C.F.R. §§279.1-279.6, and ultimately to avoid Judicial Review under 7 U.S.C. 2023(a)(13)-(15).

55. Such actions are inconsistent with the statutory requirements of the Defendant in the review and authorization of applicant retailers under 7 U.S.C. §2018 and 7 C.F.R. §278.1.

56. The Plaintiffs qualify for participation as a SNAP retailer pursuant to Criterion B of the 7 C.F.R. §278.1 and should have been authorized by the Defendant to do so.

### COUNT I: FAILURE TO COMPLY WITH STATUTORY AND REGULATORY AUTHORITY

57. The Plaintiffs re-aver the allegations set forth above as though fully set forth herein.

58. Pursuant to 7 U.S.C. §2018 and 7 C.F.R. §278.1, the Defendant is required to process the applications of retailers who would like to participate in SNAP.

59. In the instant case, the Defendant made several requests for additional information, much of which was irrelevant to the authorization criterion set out in 7 C.F.R. 278.1(b)(1).

60. The Plaintiffs complied for more than a year with these requests.

61. Upon receipt of the requested information, the Defendant is obligated to make a determination within 45 days (7 C.F.R. §278.1(a)). The Defendant has far exceeded this deadline and has generated document and information requests to toll the 45 day deadline.

62. Accordingly, the Defendant has routinely and intentionally failed to comply with its obligatory responsibilities as they pertain to the SNAP program.

63. To correct this issue, and in conjunction with Count II of this Complaint, the Defendant should be ordered by the Court to comply with its statutory and regulatory authorization obligations, and to prohibit the Defendant from withdrawing applications where retailers have responded to document requests.

64. The Plaintiffs have incurred attorney's fees and costs associated with the filing of this case, and pursuant to the Equal Access to Justice Act, should be awarded such attorney's fees and costs.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter Judgment against the Defendant for its failure to comply with the statutory and regulatory obligations set forth in 7 U.S.C. §2018 and 7 C.F.R. §278.1, and enter an order requiring the Defendant to make determinations on SNAP applications where retailers have responded to document requests, as required by 7 C.F.R. §278.1(a), and otherwise award the Plaintiffs their attorney's fees and costs incurred in this litigation.

### Count II: Request for Judicial Review

65. The Plaintiffs re-aver the allegations set forth above, to exclude Count I of this Complaint.

66. The Defendant failed to issue a denial or grant of authorization to the Plaintiffs to participate in the Supplemental Nutrition Assistance Program. However, this failure to do so is a *de facto* denial, as the Plaintiffs application is no longer pending and the store is not authorized.

67. But for the Defendant's failure to make a determination in accordance with the rules, the Plaintiffs would be either afforded an opportunity to conduct an Administrative Review, or alternatively, would have been authorized to participate in SNAP.

68. The Plaintiffs qualify for SNAP participation as an authorized retailer under 7 U.S.C. §2018 and 7 C.F.R. §278.1(b)(1), Criterion B, as more than 50% of the store's sales are in eligible staple foods.

69. The Plaintiffs are not a restaurant, by definition or by operation.

70. The Defendant has authorized other seafood stores nearby to participate in SNAP despite the presence of significant heated foods and drive through services, yet the Plaintiffs have been refused.

71. As such, the Defendant's denial of the Plaintiffs' authorization is both improper under the standards set out for Criterion B (7 C.F.R. §278.1(b)(1)(iii)), and inconsistent with the other authorizations issued by the Department to other local retailers.

72. As such, the Defendant's denial has been erroneous, and pursuant to 7 U.S.C. §2023(a)(16), should enter an order granting the Plaintiffs' application and permitting them to be authorized to participate in SNAP.

73. The Plaintiffs have incurred attorney's fees and costs in bringing this action. Pursuant to the Equal Access to Justice Act, the Plaintiffs' attorney's fees and costs should be taxed to the Defendant.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter Judgment against the Defendants, and pursuant to 7 U.S.C. §2023(a)(16), order the Defendant to authorize the Plaintiffs' store, compel the Defendant to repay lost profits for the impermissible and severe delay in authorization determinations, and award the Plaintiffs their attorney's fees and costs.

Respectfully submitted,

Dated: September 13, 2021

*Andrew Z. Tapp*

Andrew Z. Tapp, Esq.
Florida Bar No.: 68002
Metropolitan Law Group, PLLC
1971 W. Lumsden Road, #326
Brandon, Florida 33511
(813) 228-0658
Andrew@Metropolitan.Legal
LaJeana@Metropolitan.Legal